Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,932-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

TRATAVION J. TURNER                                   Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 394,716

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPEALS
AND WRIT SERVICE                          Counsel for Appellant
By: Remy V. Starns
    Douglas Daniel Brown

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

FERNANDO GRIDER, JR.
MARGARET RICHIE GASKINS
Assistant District Attorneys

* * * * *

Before PITMAN, ROBINSON, and ELLENDER, JJ.

**ELLENDER, J.**

Tratavion Turner appeals his conviction of third degree rape (a responsive verdict to the charge of second degree rape), his adjudication as a second-felony offender, and his agreed sentence of 30 years at hard labor without benefits. For the reasons expressed, we affirm the conviction, vacate the second-felony adjudication and sentence, and remand for further proceedings.

## FACTUAL BACKGROUND

The offense occurred in March 2023 at a house on West Canal Blvd., in Shreveport's Sunset Acres neighborhood. The house was owned by a Mrs. Turner, whose children were living there with her; her son, the 24-year-old defendant, was staying there occasionally. Mrs. Turner was dating a man who moved into the house along with his daughters, including the victim, 16-year-old AA.

On the evening of March 21, according to AA, she was asleep in bed when Turner came into the bedroom and asked to borrow her cellphone so he could text somebody. She gave him the phone, he left, and AA went back to sleep; moments later, he came back in, woke her up, returned the phone, and asked her how old she was. When she replied asking why he wanted to know, he responded, "Just tell me," but he left the room again. He then came back a third time, started "rubbing on" her and talking to her; he suddenly pulled her out of bed, and she saw he was already wearing a condom. AA tried to scream, but Turner placed his hand over her mouth, muffling her voice. He then began penetrating her. When he got through, he told her to "shake through" it, so we can "keep it between us," and threatened to kill her if she told anyone.

After hearing the threat, AA ran to the bathroom and called her mother, RA, to come get her; AA also texted a boyfriend to say she'd been raped. RA hurried to Mrs. Turner's house, calling the police along the way. When she arrived, AA told her Mrs. Turner's son had raped her.

Shreveport Police Department officers soon arrived at the scene; AA told one of them, Corporal Janice Allen, she had been woken up by Turner, who pulled her to the floor, covered her mouth, and penetrated her vaginally. She also said she never consented to any intercourse with Turner, her stomach and vagina were hurting from the incident, and she had struck her head on the floor when he pulled her out of bed. Officers questioned the other occupants of the house, but all of them responded they heard nothing.

AA also told officers Turner was still inside the house, but they entered and could not find him. Cpl. Allen rode with AA to the hospital.

At the hospital, SPD Detective Rodney Stewart questioned AA. She told him Turner had come into the room and started touching her as she was lying in bed; he then grabbed her, threw her to the floor, penetrated her without her consent, and threatened to kill her if she told anybody. Det. Stewart later questioned the other occupants of the house, but they again replied they heard nothing.

AA was then examined by a Sexual Assault Nurse Examiner, Katie Price. Nurse Price found some secretions in AA's vaginal area and around her cervix, which she testified could be consistent with an "aggressive consensual act." However, she also found abrasions to AA's right middle finger and upper right arm, bruising to her left wrist, abrasions on her left elbow, and redness on her right breast, all of which were consistent with AA's account of the incident.

2

The next day, AA was taken to Gingerbread House, a children's advocacy center, and interviewed by Meaghan Hughes, a forensic interviewer. AA told Ms. Hughes Turner raped her and threatened to kill her if she told anybody about it.

Turner was located, arrested, and booked into city jail about two weeks later. After receiving his *Miranda* rights, Turner told Det. Stewart he saw AA lying on his mother's bed, asked her if she wanted to have sex, and she agreed to it; they proceeded to engage in sex on the floor. Turner insisted it was not rape, as the act was consensual.

## PROCEDURAL HISTORY

The state charged Turner by bill of information with second degree rape of AA, R.S. 14:42.1. The state also filed a notice under La. C.E. arts. 404 (B) and 412.2 alleging that Turner had, in 2016, committed indecent behavior with a juvenile, and the state intended to introduce evidence of this to show his lustful disposition toward children.

The case came to a four-day trial in July 2024, but the jury reported it was unable to reach a verdict. The state then reset the matter for a second trial, to take place in June 2025. The state filed an amended 404 (B) and 412.2 notice, this time alleging both the 2016 incident of indecent behavior, to show Turner's lustful disposition toward children, and a 2022 incident of domestic abuse strangulation, to show his violent behavior toward women.[1]

---

[1] Both the original notice and the amended notice cited La. C.E. art. 412.4 ("Evidence of similar crimes, wrongs, or acts in domestic abuse cases and cruelty against juveniles cases"); however, at trial, the prosecutor correctly referred to Art. 412.2 ("Evidence of similar crimes, wrongs, or acts in sex offense cases"), and both sides have argued the substance of Art. 412.2. We have therefore disregarded the incorrect citation in the state's motions.

The case came to a second, three-day trial in June 2025. The witnesses testified as outlined above. In addition, AA testified the rape had changed her mentally, and her mother, RA, testified that, after the rape, AA "distanced herself" from her siblings, became withdrawn, asked why it happened to her, and woke up with nightmares.

A DNA analyst, Michael Madere, testified Turner's DNA was a major contributor on swabs taken from AA's body. Three swabs yielded odds that it was some person other than Turner at one in 49.4 trillion and one in 26.8 sextillion. Madere conceded he found a third DNA contributor, but this was "minor."

SPD Officer Derek Snyder testified concerning the predicate offense: he responded to a call, in June 2016, from a woman who discovered her 14-year-old daughter in bed with Turner. The defense objected to the relevance and prejudicial effect of this evidence, but the court overruled the objection. Ofc. Snyder then testified the daughter told him Turner had sexually assaulted her, and Turner admitted having "consensual" sex with her.

Turner presented no evidence.

The jury returned a responsive verdict of third degree rape.

The state promptly filed a third-felony habitual offender bill. This alleged Turner's first felony was a September 2018 guilty plea to domestic abuse battery strangulation, in the First JDC, for which he received a sentence of 90 days in parish jail, three years at hard labor, suspended, and two years of supervised probation. The second was a March 2022 guilty plea to domestic

4

abuse battery strangulation, also in the First JDC, for which he was sentenced to two years at hard labor.[2]

Before the habitual offender bill was adjudicated, Turner filed motions for post verdict judgment of acquittal and for new trial.

### ACTION OF THE DISTRICT COURT

On June 23, 2025, the parties appeared for sentencing. At the outset, defense counsel reminded the court he had filed the posttrial motions; the court summarily denied them. Without delay, the court stated it "has had an opportunity to speak with both counsel for the State and defense together." Citing the totality of the circumstances, the court stated it "agrees to give Mr. Turner the recommended sentence of 30 years at hard labor" without benefits, with credit for time served.

The court then asked Turner if he understood he had to register as a sex offender, have no contact with the victim, could not own or possess any firearms, and was to apply for the Steve Hoyle program; he replied "yes" to all queries.[3]

The prosecutor then called Turner to be sworn in and admit that "pursuant to conversation with defense counsel that sentence was agreed and stipulated to being a second." Defense counsel asked Turner if he had been convicted of domestic abuse strangulation on March 21, 2022, and of third degree rape on June 11, 2025; Turner replied "yes" to both. The prosecutor then stated that, although the habitual offender bill was for *third offense*,

---

[2] That guilty plea was March 21, 2022, and resulted in a two-year sentence. The instant offense occurred March 21, 2023, exactly one year later. This court speculates Turner was out early on time served.

[3] Steve Hoyle is an intensive substance-abuse treatment program in which eligible inmates can learn life and social skills while completing their sentences. *State v. Harris*, 55,467 (La. App. 2 Cir. 2/28/24), 380 So. 3d 837. The court likely recommended it for a sex offender like Turner for skills and reentry training.

5

Turner had agreed to be sentenced as a *second*.  The court then reiterated that it was denying Turner's posttrial motions.

Turner filed a motion to reconsider sentence, which the court summarily denied on July 23, 2025.  Turner then took this appeal.  He raised four assignments of error.

## DISCUSSION

### *Sufficiency of the Evidence*

By his first assignment of error, Turner urges the evidence was insufficient to establish third degree rape beyond a reasonable doubt.  He concedes the standard of review is that stated in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979), and La. C. Cr. P. art. 821 (B), under which the evidence is to be viewed in the light most favorable to the prosecution.  However, he cites several items which, in his view, undermine the finding of guilt: (1) His own statement to Det. Stewart maintained AA consented to the intercourse; (2) Nurse Price's findings in AA's genital area were consistent with consensual intercourse, and, further, were devoid of observations (scratches, bruises, bumps, or other injuries) to corroborate that AA was pulled out of bed and thrown to the floor; (3) Nobody in the house heard AA scream, refuting any corroboration that she resisted; (4) The DNA findings proved sexual contact but did not show lack of consent; and (5) The first jury heard essentially the same evidence but could not reach a verdict.  Turner submits these inconsistencies cast enough doubt on AA's testimony to defeat the showing of guilt.  He asks this court to vacate the conviction.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

6

of the crime beyond a reasonable doubt. *Jackson v. Virginia*, *supra*; *State v. Stockstill*, 19-01235 (La. 10/20/20), 341 So. 3d 502. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Bourgeois*, 20-00883 (La. 5/13/21), 320 So. 3d 1047; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness, in whole or in part. *State v. Brown*, 18-01999 (La. 9/30/21), 330 So. 3d 199; *State v. Combs*, 56,232 (La. App. 2 Cir. 4/9/25), 410 So. 3d 405, *writ not cons.*, 25-01108 (La. 2/3/26), 425 So. 3d 838. The appellate court does not assess credibility or reweigh evidence. *State v. Kelly*, 15-0484 (La. 6/29/16), 195 So. 3d 449; *State v. Combs*, *supra*. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Reed*, 14-1980 (La. 9/7/16), 200 So. 3d 291; *State v. Coffey*, 54,729 (La. App. 2 Cir. 9/21/22), 349 So. 3d 647, *writ denied*, 22-01574 (La. 12/20/22), 352 So. 3d 89. This includes the sole testimony of a sexual assault victim. *State v. Coffey*, *supra*; *State v. Coliston*, 56,332 (La. App. 2 Cir. 8/27/25), 420 So. 3d 284.

As it applies to this case, third degree rape is defined as a rape committed when the vaginal intercourse is deemed to be without the lawful consent of the victim because it is committed when the offender acts without the consent of the victim. La. R.S. 14:43 (A)(4); *State v. Kirby*, 53,661 (La.

App. 2 Cir. 1/13/21), 309 So. 3d 946, *writ denied*, 21-00254 (La. 5/11/21), 315 So. 3d 868.

On close review, we find the evidence meets the constitutional standard of *Jackson v. Virginia*, *supra*, and La. C. Cr. P. art. 821. AA described Turner entering her bedroom several times while she was trying to sleep: first to borrow a cellphone, then to return it and ask her age, and then to get on the bed, rub her, pull her off the bed, show he was already wearing a condom, and penetrate her. She testified she never consented to the sexual act. After having his way with her, he threatened to kill her if she told anyone about it, an attempt to silence AA that would seem unnecessary had the act been truly consensual. AA was remarkably consistent in relating her experience, not only at trial under oath, but in statements to her mother, Cpl. Allen, Det. Stewart, Nurse Price, and forensic interviewer Hughes. Given the strength and uniformity of this testimony, the jury did not abuse its discretion in disregarding Turner's statement to Det. Stewart that AA consented.

Contrary to Turner's argument, Nurse Price found injuries to AA's right middle finger and upper arm, and left wrist and elbow, that are compatible with being forcibly pulled out of bed and onto the floor. Nurse Price also found a blister to AA's upper lip, which is compatible with AA's testimony that Turner held his hand to her mouth to muffle her cries. The effort to stifle AA's screams is compatible with family members' claims they heard nothing. Viewed in the light most favorable to the prosecution, these facts do not undermine the jury's findings.

Finally, we place no stock in Turner's contention that the hung jury in the prior trial somehow made the evidence in this trial suspect. Obviously, a hung jury does not activate jeopardy or prohibit retrial. *Yeager v. United*

8

*States*, 557 U.S. 110, 129 S. Ct. 2360 (2009); *State v. Nall*, 439 So. 2d 420 (La. 1983); *State v. White*, 28,095 (La. App. 2 Cir. 5/8/96), 674 So. 2d 1018, *writs denied*, 96-1459 (La. 11/15/96), 682 So. 2d 760, and 98-0282 (La. 6/26/98), 719 So. 2d 1048. One court has already rejected the claim that "every conviction following a hung jury [can be] challenged for insufficiency of the evidence." *Francis v. Bordelon*, 2026 WL 24963 (E.D. La. 2026). There is no showing that the evidence was identical at both trials, only that the evidence was sufficient in this trial. This assignment of error lacks merit.

### Admission of Other-Crimes Evidence

By his second assignment of error, Turner urges the court erred in admitting other-crimes evidence of a 2016 incident under La. C.E. art. 412.2, the prejudicial impact of which substantially outweighed any probative value and contributed to the conviction. He shows he objected before Ofc. Snyder related this incident, but the court overruled it. In his testimony, Ofc. Snyder even admitted the 14-year-old victim in that offense told him she "had invited him or it was voluntary that he was in the bed with her." He contends that incident, resulting in a guilty plea to misdemeanor carnal knowledge, was strikingly different from this one, in which the prosecutor called him "a sexual predator." He submits the only purpose of offering the 2016 incident was for "prejudicial impact, portraying the defendant * * * as someone with a pattern of sexual conduct with children."

Evidence of other acts of misconduct is generally inadmissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him as a "bad person." La. C.E. art. 404 (B); *State v. Jacobs*, 99-0991 (La. 5/15/01), 803 So. 2d 933; *State v. Horton*, 55,468 (La. App. 2 Cir. 2/28/24), 380 So. 3d 841, *writ denied*,

9

24-00365 (La. 10/1/24), 393 So. 3d 864. This rule stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. *State v. Jacobs*, *supra*; *State v. Prieur*, 277 So. 2d 126 (La. 1973). However, La. C.E. art. 412.2 creates an exception to the rule of Art. 404 (B). *State v. Layton*, 14-1910 (La. 3/17/15), 168 So. 3d 358; *State v. Horton*, *supra*. Art. 412.2 (A) provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

The admissibility of evidence under Art. 412.2 depends on whether its "probative value substantially outweighs the danger of unfair prejudice, confusion of issues, misleading the jury, or by considerations of undue delay or waste of time." La. C.E. art. 403; *State v. Horton*, *supra*. The term "unfair prejudice" in this context refers to the capacity of the evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. *State v. Jones*, 17-00658 (La. 10/22/19), 285 So. 3d 1074; *State v. Horton*, *supra*.

A trial court's ruling on the admissibility of other-crimes evidence under La. C.E. art. 412.2 is reviewed for abuse of discretion. *State v. Wright*, 11-0141 (La. 12/6/11), 79 So. 3d 309; *State v. Horton*, *supra*. Art. 412.2 "does not limit the admissibility of prior acts only to those identical or similar in nature." *State v. Wright*, *supra*; *State v. Johnson*, 56,185 (La. App. 2 Cir. 3/5/25), 409 So. 3d 328, *writ denied*, 25-00429 (La. 6/17/25), 411 So. 3d 631. There is no requirement of "strict similarity" for admissibility. *State v.*

*Wright*, *supra*. Such evidence may be admissible if it shows an "opportunistic propensity to engage in sexual activity with [a minor] on occasions when he had unsupervised access to her." *State v. Allen*, 54,153 (La. App. 2 Cir. 12/15/21), 331 So. 3d 1101.

On close review, we find no abuse of the district court's discretion in admitting Ofc. Snyder's testimony. Although that incident was consensual and resulted in only a conviction of indecent behavior with juveniles, it showed Turner's propensity to coax his way into bed with a minor when the opportunity arose through lack of supervision. Even without strict similarity, the prior incident was relevant to show Turner's lustful disposition toward children and substantial enough to outweigh any risk of unfair prejudice. This assignment of error lacks merit.

### Habitual Offender Adjudication

By his third assignment of error, Turner urges the court erred in adjudicating him a second-felony offender and imposing an enhanced sentence based on a constitutionally deficient habitual offender colloquy. He cites the requirement of *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709 (1969), whereby the defendant must be advised of his right to a formal hearing, to remain silent, and to have the state prove both the fact of the prior conviction and his identity as the person convicted, *State v. Johnson*, 432 So. 2d 815 (La. 1983); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). He submits the district court conducted *no independent inquiry*: it merely referred to a "conversation with counsel" that the sentence and second-felony status were agreed. Then, defense counsel simply asked if Turner had been convicted of domestic abuse strangulation on March 21, 2022, and of third degree rape on June 11, 2025, and he admitted both. He contends this is the precise

11

deficiency that *Johnson* and *Bonanno* prohibit, and he asks this court to vacate the adjudication.

The state concedes that, under R.S. 15:529.1 (D)(1)(a), the defendant must be advised of the specific allegations in the habitual offender bill, *State v. Roland*, 49,660 (La. App. 2 Cir. 2/27/15), 162 So. 2d 558, *writ denied*, 15-0596 (La. 2/19/16), 186 So. 3d 1174. It further concedes no formal *Boykin* colloquy occurred in this case. However, it asserts, "it appears" there was an agreed sentence, and the meeting of the minds was beneficial to Turner, in that as a third-felony offender, as he was originally charged, he faced a mandatory life sentence, La. R.S. 15:529.1 (A)(3)(b). The state admits "an error patent occurred in this case," but suggests the agreement should be upheld, to the defendant's benefit.

Several principles govern the entry of a guilty plea. Under the Fifth and Fourteenth Amendments, the guilty plea must be recorded and show the defendant was informed of and waived three specific federal constitutional rights: (1) the privilege against compulsory self-incrimination, (2) the right to a trial by jury, and (3) the right to confront one's accusers. *Boykin v. Alabama*, *supra*; *State v. Guzman*, 99-1753 (La. 5/16/00), 769 So. 2d 1158; *State v. Small*, 50,388 (La. App. 2 Cir. 2/24/16), 189 So. 3d 1129, *writ denied*, 16-0533 (La. 3/13/17), 212 So. 3d 1158.

Louisiana law has adopted the constitutional requirement. Under La. C. Cr. P. art. 556.1 (A), a court shall not accept a plea of guilty without first addressing the defendant personally in open court and informing him of, and determining that he understands, he has the right to plead not guilty, he has the right to be tried by a jury, he has the right to assistance of counsel at trial, he has the right to confront and cross-examine witnesses against him, and the

right not to be compelled to incriminate himself. La. C. Cr. P. art. 556.1 (A)(3). While other rights delineated in Art. 556.1 are subject to harmless error analysis, the "core *Boykin* requirements" are strictly observed. *State v. Guzman*, *supra*; *State v. Russell*, 46,426 (La. App. 2 Cir. 8/17/11), 73 So. 3d 991, *writ denied*, 11-2020 (La. 2/10/12), 82 So. 3d 270.

In the context of an habitual offender bill of information, the court "shall cause the person * * * to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law[.]" La. R.S. 15:529.1 (D)(1)(a). Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. Notably, a multiple offender hearing is a status rather than a criminal proceeding, so the right to a jury trial does not apply as a matter of state or federal constitutional law. *State v. McAllister*, 366 So. 2d 1340 (La. 1978); *State v. Leblanc*, 04-1032 (La. App. 1 Cir. 12/17/04), 897 So. 2d 736, *writ denied*, 05-0150 (La. 4/29/05), 901 So. 2d 1063, *cert. denied*, 546 U.S. 905, 126 S. Ct. 254 (2005). A trial court's failure to properly advise the defendant of his rights under R.S. 15:529.1 constitutes error patent on the face of the record and requires that the habitual offender's adjudication and sentence be vacated. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486; *State v. Nobles*, 53,453 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1192, and citations therein.

Even a cursory review of this record shows that the *Boykin* colloquy failed to meet the constitutional and statutory requirements. At the hearing, the court stated:

> The Court has had an opportunity to speak with both the counsel for the State and defense together. Based on the totality of the circumstances, the Court agrees to give Mr. Turner the recommended

sentence of 30 years at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served.

The court further advised Turner he may not own or possess any firearms, he must comply with a protective order for 30 years, he must register as a sex offender, he should pursue sex offender and any other counseling (including the Steve Hoyle program), and he had the right to pursue postconviction relief.

The prosecutor then called Turner to be sworn "pursuant to conversation with defense counsel that sentence was agreed and stipulated to being a second." Turner admitted he was convicted of domestic abuse battery strangulation on March 21, 2022, and of the instant offense on June 11, 2025. The court then stated:

> Based on those statements, the Court finds that Mr. Turner so admits, and the Court so finds that he is a second felony habitual offender. And all of that that has been said today regarding all of this is duly made part of the record herein.

The prosecutor then added the state "did file the felony habitual offender bill as a third," but was "agreeing to stipulate that he is a second as he has admitted here in Open Court." The court responded, "Duly noted."

In short, there was no attempt to advise Turner and obtain his waiver of his rights under the Constitution and *Boykin v. Alabama*, *supra*. There was no effort to advise him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law, with the implicit advice about remaining silent, as provided by La. R.S. 15:529.1 (D)(1)(a).

This comes nowhere near the "minimal compliance" sanctioned by the court in *State v. Anderson*, 98-2977 (La. 3/19/99), 732 So. 2d 517. A defective *Boykin* hearing may be considered harmless, when the defendant's "habitual offender statue is established by competent evidence offered by the

14

state at a hearing rather than by the admission of the defendant." *State v. Nobles*, *supra*; *State v. Bell*, 03-217 (La. App. 5 Cir. 5/28/03), 848 So. 3d 87. On close examination, we are unable to find any other competent evidence at the hearing to establish Turner's habitual offender status. On this record, we are constrained to vacate the adjudication and remand the case for further proceedings.

We also recognize the state's suggestion that the plea agreement was fundamentally beneficial to Turner: as a third-felony offender, he faced a mandatory life sentence, La. R.S. 15:529.1 (A)(3)(b). However, having asserted his constitutional rights under *Boykin* and his statutory rights under La. C. Cr. P. art. 556.1 and R.S. 15:529.1, Turner is entitled to a hearing with a proper disclosure and waiver of his rights. The adjudication is therefore vacated, and the case is remanded for further proceedings.

In light of this decision, we pretermit any consideration of Turner's fourth assignment of error, which contended his 30-year sentence was constitutionally excessive.

## CONCLUSION

For the reasons expressed, Turner's conviction of third degree rape is affirmed. His adjudication as a second-felony offender, and his sentence as such, are vacated, and the case is remanded for further proceedings.

**AFFIRMED IN PART; VACATED IN PART; REMANDED**.